**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MIKE GENE CRANFORD,**

    **Plaintiff,**

v.                                                                                   Case No:  6:13-cv-415-Orl-GJK

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## MEMORANDUM OF DECISION

The Plaintiff Mike Gene Cranford (the "Claimant") brings this action pursuant to the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for disability benefits. Doc. No. 1. Claimant alleges a disability onset date of January 1, 2009. R. 61. Claimant argues that the Administrative Law Judge (the "ALJ") erred by: failing to state with particularity the weight given to the opinion of Claimant's treating psychiatric advanced registered nurse practitioner, Brenda Zimmerman; giving significant weight to the opinions of the non-examining state agency psychologist, but adopting a less restrictive residual functional capacity ("RFC") assessment; failing to consider and state the weight given to various global assessment of functioning ("GAF") scores; and finding, at step-five of the sequential evaluation process, that Claimant can perform the job of addresser, where the vocational expert

(the "VE") did not testify that Claimant could perform that work. Doc. No. 21 at 11-19. For the reasons set forth below, the Commissioner's final decision is **AFFIRMED**.[1]

I.  ANALYSIS.

   A. Ms. Zimmerman's Opinion.

Claimant argues that the ALJ erred by failing to state with particularity the weight given to the June 10, 2011, opinion of Claimant's treating psychiatric advanced registered nurse practitioner, Brenda Zimmerman (R. 570-73). Doc. No. 21 at 14. Ms. Zimmerman treated Claimant on five occasions between June 24, 2010 and June 10, 2011. R. 570.

On June 24, 2010, Ms. Zimmerman's treatment notes indicate that Claimant, who has a history of anxiety and depression, presented for treatment, evaluations, and medication management. R. 490. Ms. Zimmerman's notes show that Claimant previously received treatment from a psychiatrist, who diagnosed anxiety disorder, not otherwise specified, and rule out bipolar disorder. R. 490. Claimant reported "his mood has improved with addition of mood stabilizer, however he continues to have some residual anxiety, and irritability." R. 490-91.

On June 24, 2010, Claimant was well groomed; cooperative; maintained good eye contact; displayed full affect, but a dysphoric and anxious mood; intact impulse control; normal speech; logical, relevant, and goal directed thought processes; adequate insight and judgment; intact recent and remote memory; adequate concentration for duration of the session; and no psychotic features, suicidal or homicidal ideation. R. 491. Ms. Zimmerman's notes state Claimant's Axis I diagnosis

---

[1] Claimant also argues that the case must be remanded because the record on appeal does not contain Ms. Zimmerman's opinion despite that the fact Claimant provided it to the ALJ at the hearing, it was discussed at the hearing, and the ALJ discusses the opinion in the decision. Doc. No. 21 at 12-14. Claimant maintains that the Court cannot conduct substantial evidence review without Ms. Zimmerman's opinion. Doc. No. 21 at 12-14. After Claimant's brief was filed, the Commissioner supplemented the administrative record by providing Ms. Zimmerman's opinion. Doc. No. 26-1 (cited hereinafter as "R. 570-73"). Claimant has not sought leave to file a reply addressing the supplemental record. The administrative record is now complete and the Court can conduct substantial review. Therefore, the Court finds that this issue is moot or has otherwise been waived by Claimant.

was "Bipolar II Disorder, depressed," and he had a GAF score of 60.  R. 491.  Ms. Zimmerman increased Claimant's divalproex medication and continued trazodone, alprazolam, and valproic acid.  R. 491-92.

On November 9, 2010, Claimant reported that the increase in divalproex has improved his mood, he is less anxious, and he has been able to reduce his medication intake.  R. 559.  Ms. Zimmerman's mental status examination findings correlate with Claimant's statements.  R. 559.

Claimant did not receive any further mental health treatment from Ms. Zimmerman until April 4, 2011.  R. 543-47.  On that day, however, Claimant's condition deteriorated.  R. 543-47.  Claimant reported that he was not thinking straight, he had suicidal ideation, but he would not harm himself because he had to care for his elderly mother.  R. 544-45.  Ms. Zimmerman's notes reflect that Claimant had a normal appearance; relaxed motor activity; cooperative, but guarded interpersonal display; normal speech; sad, angry, irritable, anxious, and depressed mood characterized by decreased energy, concentration, appetite, and sleep; flat affect; normal thought progression; somatic thought content; intact remote and recent memory; normal attention and concentration; average fund of knowledge; fair insight and judgment; fair impulse control; and a semi-urgent acuity level.  R. 544-46.  Claimant agreed to a voluntary admission to a mental hospital for treatment of depression, but later that same day he refused admission, stating that he did not want to be away from his family.  R. 547.  Ms. Zimmerman's notes state that Claimant did not meet the criteria for involuntary admission and, therefore, he was released.  R. 547.

On April 14, 2011, Claimant returned for further treatment.  R. 540-42.  Mental status examination revealed that Claimant's symptoms were improving.  R. 541-42.  Claimant was appropriately dressed, calm, and cooperative, but displayed a depressed mood, restricted affect, normal attention, concentration, and memory, normal thought process, fair judgment, and good

insight. R. 541-42. Claimant's diagnosis was reported as bipolar disorder and Claimant was assigned a GAF score of 50.

On April 29, 2011, Ms. Zimmerman's treatment notes indicate that Claimant was continuing to improve. R. 536-39. Ms. Zimmerman's notes show that Claimant was a low risk for suicide. R. 537. Claimant reported "his mood has significantly improved, and . . . he is feeling much better and more hopeful." R. 538. Claimant stated that he was sleeping well, and he denied any hypomanic or manic symptoms. R. 538. Ms. Zimmerman's mental status examination revealed that Claimant was well groomed; cooperative and maintained good eye contact; had full affect and improved mood; normal speech; logical, relevant, and goal directed thought processes; adequate insight; intact impulse control; intact recent and remote memory; adequate concentration for the duration of the session; and no psychotic features or suicidal ideation. R. 538. Ms. Zimmerman's notes reflect a diagnosis of bipolar II disorder, opioid dependence and a GAF score of 55. R. 539. The record contains no other treatment notes from Ms. Zimmerman.

On June 10, 2011, Ms. Zimmerman completed a set of interrogatories and a mental RFC (the "MRFC") assessment. R. 570-73. In the interrogatories, Ms. Zimmerman's notes reflect a diagnosis of bipolar II disorder, depressed type, and opioid dependence. R. 570. Ms. Zimmerman opined that Claimant's prognosis is fair, but he will likely continue to have symptoms, which will impair him occupationally. R. 570. Ms. Zimmerman also stated that the side-effects of Claimant's medications are "sedation." R. 570.

In the MRFC, Ms. Zimmerman opined that Claimant is moderately limited in the ability to maintain social functioning; he has no limitations in performing activities of daily living; he is moderately to severely restricted in his ability to maintain concentration, persistence or pace, and in the "[e]stimated degree of repeated episodes of deterioration or decompensation in work or

work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behavior)." R. 571. The MRFC defines "moderate" as "an impairment of slight importance which affects, but does not preclude, ability to function," and it defines "moderately-severe" as "an impairment which seriously and significantly interferes with the ability to perform basic work activities independently, appropriately, and effectively." R. 571.

Ms. Zimmerman also opined that Claimant is "moderately-severe" limited in the ability to do the following on a sustained basis in a routine work setting: sustain attention and concentration to tasks at work; achieve assigned goals and respond to time limits at work; and to respond appropriately to changes in the work setting. R. 572-73. Ms. Zimmerman opined that Claimant is severely limited, *i.e.*, an extreme impairment in ability to function, in the following areas: performing work that requires regular contact with the public; responding appropriately to stress and customary work pressures; maintaining regular production standards at work; and performing work within a schedule, maintaining regular attendance, and being punctual within customary tolerances. R. 572-73. In all other areas, Ms. Zimmerman opined that Claimant had either no limitations or moderate limitations. R. 572-73.

In her decision, the ALJ found at step-two of the sequential evaluation process that Claimant has the following severe impairments: degenerative disc disease of the lumbar spine, status-post fusion surgery; and bipolar disorder. R. 23. The ALJ further found that Claimant has mild restrictions in activities of daily living, moderate restrictions in maintaining social functioning and in concentration, persistence or pace. R. 24. Ultimately, the ALJ determined that Claimant

retains the ability to perform an RFC that is limited to simple routine tasks, periods of concentration limited to 2 hours, and only occasional interaction with the general public. R. 25.[2]

With respect to Claimant's mental impairments, the ALJ provides a detailed description of the medical record. R. 29. The ALJ then states the following:

> The [ALJ] has considered the opinion evidence regarding the claimant's mental impairments. The treating advanced registered nurse practitioner (ARNP) submitted a June 2011 mental status statement supportive of more significant limitations [than found by the ALJ]. This opinion has been considered pursuant to Social Security Rule 06-3p, but this opinion does not correspond to the treatment notes in 2010 and 2011 in the latest . . . submissions or with the claimant's reported activities. The [ALJ] has considered and accords more weight to the opinions of the [non-examining] State Agency medical consultants who evaluated this issue at the initial and reconsideration levels.

R. 29. Thus, the ALJ states that Ms. Zimmerman submitted an opinion, which is more restrictive that the ALJ's RFC, and the ALJ considered it pursuant to the requirements of SSR 06-3p, but ultimately the ALJ found that Ms. Zimmerman's opinion "does not correspond" to her treatment notes from 2010 and 2011. R. 29. The ALJ then states that he gave more weight to the opinions of the non-examining psychologists who provided MRFCs based on a records review. R. 29.[3]

The ALJ also states the following:

> The [ALJ] also notes that on the last two mental health visits dated April 14 and 29, 2011, the claimant reported that his mood had significantly improved. He was feeling much better and hopeful. He was sleeping well. He denied and hypomanic/manic symptoms, or feelings of depression or being overwhelmed. He was coping adequately. The claimant was casually attired with good grooming. He was cooperative and maintained good eye contact. The rate, volume, and tone of his speech were normal. His thought processes

---

[2] The ALJ's RFC also includes physical limitations that reflect a reduced range of light work, but because the only aspect of the RFC at issue involves Claimant's limitations from mental, non-exertional impairments, it is unnecessary to discuss the ALJ's physical findings or portions of the medical record related to those impairments. *See* R. 25; Doc. No. 21.

[3] The Court will discuss the opinions of the non-examining psychologists in more detail in the next subsection.

> were logical, relevant, and goal directed. His insight was adequate, and his judgment for social conventions was intact. His concentration was adequate as well. There was no evidence of any psychotic features or suicidal/homicidal ideation as well as no psychomotor retardation/agitation. His attention and concentration was normal as well as his recent and remote memory.

R. 30. Thus, the ALJ thoroughly discussed Ms. Zimmerman's recent treatment notes. R. 30.

As set forth above, Claimant argues that the ALJ's handling of Ms. Zimmerman's opinion is error because the ALJ did not state with particularity the weight given to her opinion. Doc. No. 21 at 14 (citing *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. 2011)). Claimant is correct that, although it is clear that she gave more weight to the opinions of the non-examining psychologists, the ALJ did not state with particularity the weight given to Ms. Zimmerman's opinions. R. 29. Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit held that whenever <u>a physician or licensed psychologist</u> offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis; what the claimant can still do despite his or her impairments; and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178-79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given

to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error).

The distinction between this case and the standard for handling medical opinion evidence set forth above is that Ms. Zimmerman is not a medical doctor, a psychologist, or an "acceptable medical source." The regulations and SSR 06-3p clearly provide that only a physician, psychologist or an "acceptable medical source" can provide a medical opinion. *See* 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2); SSR 06-3p. An "acceptable medical source" includes licensed optometrists, podiatrists, and qualified speech-language pathologists. *See* 20 C.F.R. § 404.1513(a). Thus, a psychiatric advanced registered nurse practitioner like Ms. Zimmerman is not an "acceptable medical source," and the ALJ did not violate the *Winschel* standard by failing to state with particularity the weight given to her opinions. *See Leland v. Colvin*, 2014 WL 25453 at *10 (N.D. Fla. Jan. 2, 2014) (finding nurse practitioner not an acceptable medical source and, therefore could not give a medical opinion); *Ballies v. Astrue*, 2011 WL 3961818 at *6 (M.D. Fla. Sept. 8, 2011) (while nurse practitioner's opinion must be considered, standing alone it is not entitled to any particular deference).

Although the ALJ was not required to state with particularity the weight given to Ms. Zimmerman's opinions, as an opinion from an "other source" (*see* 20 C.F.R. § 404.1513(d)), SSR 06-3p provides that the ALJ "generally should explain the weight given [to it] or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning." *Id.* In this case, the ALJ acknowledged that Ms. Zimmerman's 2011 opinions were "supportive of more significant limitations," but the ALJ also clearly articulated that Ms. Zimmerman's opinions conflict with her treatment notes from 2010 and 2011. R. 29. That finding

is supported by substantial evidence because, with the exception of a two-week period in April of 2011, Ms. Zimmerman's treatment notes, including the last treatment note on April 29, 2011, are largely benign and they conflict with her subsequent opinions. *See* R. 30, 490-92, 536-47, 559, 570-73. *See also supra* pp. 2-5. Pursuant to SSR 06-3p, the ALJ appropriately considered Ms. Zimmerman's opinions, but gave more weight to the opinions of the non-examining psychologists' opinions. R. 29. Accordingly, Claimant's argument is rejected.

### B. Non-Examining Psychologists' Opinions.

Claimant maintains that although the ALJ gave significant weight to the opinions of the non-examining psychologists' opinions, the ALJ erred by impermissibly substituting her opinion that of the non-examining psychologists. Doc. No. 21 at 15, 19. Claimant contends that the ALJ's RFC for simple routine tasks, periods of concentration limited to 2 hours, and only occasional interaction with the general public, is less restrictive than the opinions of the non-examining psychologists. Doc. No. 21 at 19. Claimant's argument hinges upon the ALJ's following statements:

> The [ALJ] has considered and accords more weight to the opinions of the State agency [non-examining psychologists] who evaluated this issue at the initial and reconsideration levels. The [ALJ] give[s] significant weight to these opinions that the claimant's mental impairments are not disabling, but additional evidence received into the record at the hearing level convinces the [ALJ] that the claimant was less limited than originally thought in his ability to participate in activities of daily living, and in his ability to deal with supervision.

R. 29. Thus, Claimant argues that the ALJ's statement that "additional evidence received into the record at the hearing level convinces the [ALJ] that the claimant was less limited than originally thought," evidences the ALJ impermissibly substituting her opinion for that of the non-examining psychologists. Doc. No. 21 at 15.

The Court disagrees. The MRFC opinions provided by Drs. Theodore Weber and Pamela D. Green (R. 252, 456) are essentially identical. They opine that despite his impairments, Claimant remains capable of understanding and remembering simple instructions; completing simple tasks and work procedures; and cooperating and being socially appropriate in a work environment; but Claimant may have difficulty maintaining attention and concentration for extended periods. R. 252, 456. The ALJ's RFC limited Claimant to simple routine tasks, periods of concentration limited to 2 hours, and only occasional interaction with the general public. R. 25. The Court finds that the ALJ's RFC and the opinions of the non-examining psychologists are substantially similar, and that the ALJ's RFC is not less restrictive than their opinions. *Compare* R. 252, 456 *with* R. 25.[4] Accordingly, Claimant's argument is rejected because the ALJ's RFC assessment is supported by substantial evidence.

**C. GAF Scores.**

The record contains various GAF scores ranging from 50 to 60, which indicates severe to moderate mental symptoms and/or impairments. *See generally* R. 278, 290, 305, 330, 492, 539. *See also* DSM-IV-TR, 4th ed. p. 34.[5] Claimant argues that the ALJ erred by failing to consider and weigh those GAF scores. Doc. No. 21 at 15-16 (citing *McCloud v. Barnhart*, 166 Fed.Appx. 410, 418 (11th Cir. 2006) (unpublished) (remanding in part where ALJ failed to consider or weigh GAF scores); *Denton v. Commissioner of Social Security*, Case No. 6:10-cv-1893-Orl-GJK, Doc.

---

[4] Moreover, the ALJ thoroughly explains how she translated her findings at step-two related to Claimant's ability to perform activities of daily living, maintain social functioning, and maintain concentration, persistence or pace into the ALJ's RFC. R. 30-31.

[5] A GAF score of 41-50 indicates serious symptoms, such as suicidal ideation or severe obsessional rituals, and/or a serious impairment in social, occupational, or school functioning. *See* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000). GAF scores between 51 to 60 reflect moderate symptoms, such as flat affect or occasional panic attacks, and/or a moderate difficulty in social, occupational, or school settings. *Id.*

No. 26 at n. 6 (M.D. Fla. Mar. 5, 2012) (stating that on remand the ALJ should consider and determine weight to give GAF scores)).

The Court finds Claimant's argument unavailing for two principle reasons. First, the cases relied upon by Claimant are distinguishable. In *McCloud*, 166 Fed.Appx. at 415, 418, the Eleventh Circuit essentially found that the ALJ made a material factual misrepresentation when the ALJ stated that the claimant had a GAF score of 45, which reflects only moderate impairments. *Id*.[6] Based on that factual misstatement, the Eleventh Circuit was unable to determine whether the ALJ properly considered and weighed the claimant's GAF scores and, therefore, remanded the case for the ALJ to consider and weigh all of the claimant's GAF scores. *Id*. Here, there is no allegation that the ALJ made any factual misstatements related to Claimant's GAF scores. *See* Doc. No. 21 at 15-16.

In *Denton*, Case No. 6:10-cv-1893, Doc. No. 26 at 16-19 (M.D. Fla. Mar. 5, 2012), this Court reversed and remanded the case to the Commissioner because the ALJ failed to state with particularity the weight given and the reasons therefor to five conflicting medical opinions. *Id*. In a footnote, this Court stated that on remand the ALJ should also consider and determine what weight to give claimant's GAF scores. *Id*. at n. 6. Thus, although this Court directed the ALJ on remand to consider and weigh Claimant's GAF scores, the Court did not reverse the case based on the ALJ's handling of the claimant's GAF scores. *Id*. at 16-19. Accordingly, the Court finds that the cases relied upon by Claimant are distinguishable from the present case.

Second, here the ALJ provided an extensive review of the medical record related to Claimant's mental health impairments, including his 2010 GAF score of 60. R. 29-31. At step-two, the ALJ found that Claimant's mental impairment, bipolar disorder, is a severe impairment,

---

[6] *See* supra n. 5 (GAF scores of 41-50 reflect serious impairments).

and the ALJ included limitations therefrom in the ALJ's RFC. R. 23-25. The ALJ also clearly discussed how the findings at step-two translated into the RFC assessment. R. 30-31. Nevertheless, Claimant is correct that the ALJ did not specifically discuss any of Claimant's GAF scores other than the 2010 GAF score of 60. R. 23-31. However, there is no rigid requirement that the ALJ state with particularity the weight given to GAF scores. *See generally Hurt v. Commissioner of Social Security*, 2013 WL 462005 at *4 (M.D. Fla. Feb. 7, 2013) (ALJ not required to comment on every GAF score). Courts in this district have also recognized that GAF scores are of "questionable value in determining an individual's mental functional capacity." *Wilson v. Astrue*, 653 F.Supp.2d 1282, 1293 (M.D. Fla. 2009) (quoting *Gasaway v. Astrue*, Case No. 8:06-CV-1869-T-TGW, 2008 WL 585113, at *4 (M.D. Fla. Mar. 3, 2008)).[7] Given their questionable value, courts have generally declined to find reversible error where an ALJ does not expressly discuss a claimant's GAF scores. *See, e.g.*, *Bailey v. Astrue*, Case No. 3:09-cv-383-J-JRK, 2010 WL 3220302, at *8-9 (M.D. Fla. Aug. 13, 2010) (finding the ALJ's failure to mention Plaintiff's GAF scores did not require remand); *Smith v. Comm'r of Soc. Sec.*, Case No. 6:10-cv-1478-Orl-31KRS, 2011 WL 6217110, at *6-7 (M.D. Fla. Nov. 1, 2011) *report and recommendation adopted,* 2011 WL 6217124 (M.D. Fla. Dec. 14, 2011), *aff'd*, 486 F. App'x 874 (11th Cir. 2012) (stating "[b]ecause the ALJ indicated that he carefully reviewed the records before him, and there is no indication that he overlooked or misconstrued any GAF score, I recommend that the Court find that the ALJ did not err by failing to include the GAF scores in his decision or by failing to state the weight he gave to each score."); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (there is no rigid requirement that an ALJ specifically refer to every piece

---

[7] The Court notes that the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders does not utilize the GAF score scale, noting that it was recommended "the GAF be dropped . . . for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

of evidence in the record). In light of the ALJ's thorough discussion of the medical evidence pertaining to Claimant's bipolar disorder and the ALJ's detailed description of how the ALJ accounted for Claimant's limitations therefrom into the ALJ's RFC assessment (R. 29-31), there is no indication that the ALJ failed to consider or misconstrued any of Claimant's GAF scores. Thus, consistent with the cases cited above, the Court finds that the ALJ did not error by failing to expressly consider and weight any of Claimant's GAF scores in the decision. Accordingly, Claimant's argument is rejected.

### D. VE Testimony.

Claimant argues that the ALJ erred at step-five by finding, based on the VE's testimony, that Claimant can perform the job of addresser. Doc. No. 21 at 18. In the decision, the ALJ found, based on the VE's testimony, that the Claimant can perform work as an addresser, document preparer/microfilmer, and pari-mutuel ticket checker. R. 32. Claimant is correct that the VE did not testify that Claimant could perform the job of addresser. R. 65-67. However, the ALJ's error is not prejudicial to Claimant because there is no dispute that the VE testified that Claimant could perform work as a document preparer/microfilmer and pari-mutuel ticket taker. R. 32, 65-67. *See Jones v. Commissioner of Social Security*, 492 Fed.Appx. 70, 72 (11th Cir. Oct. 12, 2012) (unpublished) ("An ALJ's errors in conducting the five step evaluation may be harmless if they do not prejudice the claimant."). Accordingly, Claimant's argument is rejected.

### II. CONCLUSION.

Based on the forgoing, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**;

2. The Clerk is directed to enter judgment in favor of the Commissioner; and

3. The Clerk is directed to close the case.

**DONE AND ORDERED** in Orlando, Florida on March 17, 2014.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of record by electronic notification

The Court Requests that the Clerk
Mail Copies of this order to:

The Honorable Mary C. Montanus
Administrative Law Judge
C/o Office of Disability Adjudication and Review
3505 Lake Lynda Dr.
Suite 300
Orlando, FL 32817-9801